Case number 22-50434, Tawakkol v. Vasquez. And we'll begin with Catherine Cherry for Vasquez. Good morning. May it please the court. I represent the state defendants in this case. I'm going to try to speak in the microphone, but if you can't hear me, just let me know. I'm going to primarily speak about the Ex parte Young issue and the due process arguments that we're raising. And the United States will, to the extent it has time, address the challenge to the Secretary's authority. So for the Ex parte Young issue, the district court did not have subject matter jurisdiction over Tawakkol's second claim that the Secretary of Defense exceeded his authority in designating Tawakkol's offense as a sex offense under SORNA. Ex parte Young does not waive Texas's sovereign immunity for that type of claim. And I can explain why in two main points. The first is that we're looking at this case, and there are two main questions. The first question is, did a state official faithfully apply federal law? Or did a state official act within the confines of federal constitutional law? The second question is, did a federal official faithfully apply federal law? And there you see that Ex parte Young just does not extend that far. If you look at Pennhurst, for example, Pennhurst says that the Ex parte Young exception extends as far as its purpose is vindicated. And the purpose of Ex parte Young is to vindicate federal constitutional law over state actions and state law. The same with Whole Woman's Health versus Jackson. There, the court held that the Ex parte Young exception is narrow. Another issue and another way that you can look at this problem is that. So your argument is for that challenge, they would need to sue some federal person. The Secretary of Defense or somebody like that would need to get sued if they wanted to challenge that. That's your argument? Yes, but I also think there's an APA problem. That this is a classic APA claim because you're challenging a rulemaking. And so if the APA is kind of a comprehensive statute, and there are already in the EPA sovereign immunity grants. Well, I'm not saying where they would need to rule. That's who they would need to bring it against. Exactly, right. Regardless of whether it's an agency matter or coming to a district court or whatever. Right, exactly. So let me back up just a little bit. Assuming that there's no conflict with federal law, and I understand your arguments, but assuming for the purposes of my question that there is no conflict with federal law, do the defendants in this case have the authority to provide a remedy? Just to clarify for a second. So if DPS correctly interpreted the Department of Defense's regulations. Right, and there's no conflict with federal law, would the defendants in this case, the main defendants, be able to comply with the demand that the plaintiff made? If he's still arguing that he doesn't have to register, no. But if he's arguing, or, but the district court could say, look, the federal defendants are not violating the federal law check, so they don't have to do an injunction. But you need to go and challenge the federal offense. OK, that's what I'm asking, is in terms of who's the proper defendant in the case. So maybe I'm touching upon the same issue that Judge Haynes just asked about. In terms of, you mentioned that there's an APA claim. But these defendants, the defendants we have in this case, certainly aren't responsible for that. Right, and it's putting us in the kind of unenviable position of defending the United States' regulations, which is not usually where Texas is. So we would say that you really need to stop at the first inquiry. If there are no more questions on that issue, I'll just go to due process, which I can also address in two points. We would rather the court decide the due process issue now, here, rather than remand. And that's because the relevant facts are agreed upon by both sides. And you can even see Talichel's opening brief on page three to say that. But the facts are basically Talichel was convicted of a sex offense. He was told through several documents that that sex offense was a registrable sex offense, and that he would have an obligation to register, where state law required it, and where federal law required it. And all that DPS looks to when they're determining if someone is an extra-jurisdictional registrant is those findings by the convicting court, that you have a sex offense, and that it is registrable or reportable if you use the jurisdiction. The defendants in this case don't have any discretion as to whether or not to record this, correct? Correct. Right. That's required by state law under Article 62. If ex parte young does not apply, then how can you get to due process if it doesn't apply? Right. So if you disagree with us on ex parte young, I don't think there's a reason. And you disagree with us on the interpretation of the statute, I don't think there's a reason necessarily to go to due process, because the only relief that he's seeking is, well, he's seeking injunctive relief, declaratory relief, and nominal damages. And he's not entitled to damages from the state. The declaratory relief is retroactive. And so it would just be the same injunction that the district court already gave. But that brings out a point, which is, you can find for us on the ex parte young point, or you can find for us on the interpretation of the 951 note in either case. The result for us is the same, which is that we're not permanently enjoined from requiring a sex offender to sign up on the sex offender registry. I think the last, and I'm sorry, under Connecticut DPSV DOE, those requirements that I listed are all that are required for DOE, I'm sorry, for Talico to have his procedurally safeguarded opportunity to contest his sex offender status. The second issue is that Talico argues that he did not receive notice during the plea colloquy. And he notes several times that the trial judge never said, did he have to register, and did he have to register in Texas? But since he's not challenging his plea, that's irrelevant. What is relevant are all the documents that he signed while he was still before that court. So that's the result of trial at 3-12 that says that the offense is reportable, the defense counsel acknowledgment at 3-21, which he initialed each time, and the notice of release at 3-24 to 3-25 that actually showed that, he signed it on 3-25, that actually and that he was obligated to fulfill all or any requirements that Houston or Texas generally had for sex offenders. I still have a lot of time. Well, you're not required to use all the time. OK. I'll use what you want of your time. Yeah. So I'll leave the statutory issues to the government. So if there are no more questions, I'll sit down. Thanks. OK. Thank you. You can give the, so we're going to hear from the amicus. Ms. Dixon, you can give her an extra four minutes. Good morning, and may it please the court. Courtney Dixon for the United States as amicus, participating on the statutory authority issue. Obviously, we participated on the assumption that this issue is properly presented and that the district court had jurisdiction to address it, but I'm happy to, of course, answer any questions that the court might have about the federal statutory scheme. Congress in the UCMJ and in SORNA recognized the unique context of military life and granted the secretary broad authority under SORNA to specify qualifying military offenses. The secretary acted well within that authority here in specifying plaintiff's offense as a registrable offense under SORNA. OK. So what is it that you specifically want to address? I mean, Your Honor, we haven't participated again on the jurisdictional question, but the district court here held that the secretary lacked authority to specify indecent visual recording as a registrable offense under SORNA. That's inconsistent with the plain language of SORNA, which grants the authority, again, as I mentioned, broad authority to specify sex offenses under the UCMJ that are sex offenses under SORNA. This offense has long been listed as one of those offenses. And the district court erred in holding that the secretary was ultra-virus here. So again, to the extent that the court has questions about that aspect of the district court's holding, I'm happy to address them or other aspects of the federal statutory scheme. Well, no, I wasn't asking what our questions are. I was asking why you wanted time to argue. What do you want to talk about? So please, tell us. Certainly, Your Honor, one, we wanted to be here to answer the court's questions. Because again, the district court made a holding about the federal statutory scheme in the context in which the federal government is not a defendant. And to the extent that the court had questions about that aspect of the district court's holding, we wanted to emphasize, as I had noted, the unique context of military life that Congress has recognized, the fact that the secretary does have broad authority under SORNA, and that in specifying indecent visual recording as a registerable offense, the secretary was well within the heartland of the authority that SORNA grants him. Well, but what about their argument that because Congress said only when it's minors, it's an offense, then because these were adults, it's not, that that's sort of different from just a generic la, la, la. This was kind of something Congress did specifically. So how can the secretary move past that? That's their argument. So I'd like you to tell us your thoughts on that. I think the fact that Congress in SORNA recognized at least one context in which this offense is a registrable one in SORNA itself, when it's against a minor, only supports the secretary's authority to recognize this as a registrable offense in the unique military context. Military life is just not equivalent to federal civilian life. Active duty service members, or in this case, Air Force cadets, don't have the same freedoms as you and I do to choose to live and work and go wherever we want, whenever we please. If you live and work in close quarters with other service members, it's a very hierarchical structure with limited autonomy, and there are heightened vulnerabilities in that context. It's appropriate for Congress and the secretary to recognize that invasions of intimate bodily privacy in the unique context of military service are uniquely invasive, and there's a particular need to deter this kind of conduct. So you're saying even if then Judge Yackel was correct that it needs to be uniquely military, that it is uniquely military here? So no, the district court thought that the secretary's authority to specify offenses that didn't already meet other aspects of the SORNA definition was limited to what the district court referred to as uniquely military offenses, things like conduct on becoming of an officer. That's not right. That's not in the plain text. And as we explained in our brief, that doesn't make really a lot of practical sense. Well, this is conduct on becoming of an officer. He was charged in that, but he was then charged, sorry, convicted, pled guilty to the most specific sexual misconduct. I think to Your Honor's question, and maybe what I do think is true, is that it doesn't have to be a uniquely military offense, but that conduct can take on unique significance in the military context. So something that, you know, if Congress has distinguished between minors and adults in the federal civilian context, that doesn't say that the secretary lacks the authority to say in the context of the military, in which there are, again, heightened vulnerabilities that aren't present in federal civilian life, that the secretary can designate offenses as registrable offenses under SORNA. And of course, the plain language of SORNA does give the secretary this authority to go beyond what he's entitled to do, but it doesn't  And so I think it's a good point that in the military, you have sort of limited restrooms. You have to use this particular one all the time, as opposed to when you go to the mall, you could go to A or B or whatever, and so it's just kind of random that this guy happened to film you in A. You don't ever have to go to A again if you don't want to, versus in the military, it's much more restrictive, and there's limited space, limited places, and you're kind of there every day. In this case, it was a lady taken by a man, so we'll just use that example. If you're the lady, you're going to have to use that restroom, and this guy's every day filming you. That's kind of different from the mall hypo that I get. Yes, Your Honor, I think that's one aspect of it, and I think the secretary's listing of these military offenses, Congress's grant of the authority to the secretary, reflects those kind of unique concerns that might not be present in federal civilian life. And obviously, of course, there's, as I noted, a heightened need to deter this kind of conduct in the military service, and Justice Roberts made that point in his concurring opinion in the Kevito case. Now, if we end up concluding that we lack jurisdiction, then you all would be in a position to represent the Secretary of Defense if that's who they ended up suing. If they sued and if other, obviously, threshold jurisdictional things were met, yes, the Secretary of Defense would be the one responding. Whether it's an APA or straight to a district court and all that, I'm not getting into that detail, but bringing the Secretary of Defense before us, which has not been done. No. OK. No questions. OK. Thank you. Appreciate it. All right. We'll now turn to the appellee, and we'll hear from Richard Gladden. Good morning. May it please the Court. I'll deal just briefly, I think, with what's been referred to as the sovereign immunity issue. My client sued the state defendants in their official capacities on the ground that there is a disputed issue of material fact, that is the age of the alleged victims related to the military conviction, that entitled them to notice and an opportunity to be heard by someone in a judicial capacity before there is a determination that they committed a sex offense as defined by SORNA that would require my client to register as a sex offender. It wasn't a fact issue as to whether these military ladies were minors or adults. The allegation didn't make that clear one way or the other. The military judge did not make a finding as to the age. He refused to make a finding about whether it was a sex offense or not, and contrary to federal law, delegated that to whoever might decide afterwards. After the military proceeding ended, then the prosecutor took the plaintiff, in this case, my client, down the hall and had him sign an acknowledgment that, although the prosecutor in court said, we agree that nobody knows whether he's required to register. And then once they got him down the hallway,  the prosecutor did, a thing acknowledging some duty that he may have a duty to register under state law, but no finding was made anywhere. And Judge Yackel notes that in his opinion. The military judge made no finding. The state of Texas just decided that because it was a video voyeurism, they could expand it in reliance on the military manual, the Secretary of Defense's manual, to dispense with due process on the age of the victim. And getting back to sovereign immunity, what federal law do you contend that these defendants have violated? OK, it's a procedural due process, all right? And under state law, and actually I'll back up from that, the current existing regulations that were proposed by US Attorney General Barr and adopted by Attorney General Garland after the Biden administration came in, says we have to rely on state officials to do the registering of individuals that if a state is not able, or declines, or refuses, or maybe under a court order can't register that person, they have an affirmative defense that would bar any federal prosecution for their failure to register, whether they cross state lines in interstate commerce or otherwise. So by getting an injunction to require due procedural due process from the state defendants, then we could litigate that matter in a federal court. And the fact that there may be another official party does not deprive the court of jurisdiction to decide the procedural due process claim under the 14th Amendment. And as a matter of fact, the injunction, as shown by this case, prohibiting the state of Texas defendants from registering my client, ends the matter. Because even if the federal authorities wanted him to register, it would. But you're not appealing the underlying conviction. No, we're not. Which he pled guilty. No, we're not. So that's the case in which a failure of due process in that case is the right one to proceed. No, no, the liberty interest protected is the right not to be deprived or be required to register as a sex offender. When you haven't been convicted of a sex offense, our position was this is not defined as a sex offense under SORNA. And I would like to go ahead and get into the statutory issues that we've got here. Congress, under the federal Constitution, has authority to adopt rules and regulations that govern both the land and naval forces. That's in Article I, I believe, Section 8, Clause 14. That's what occurred in this case. Under the Wetterling Act, they told the Secretary of Defense that he could designate offenses that were comparable to the civilian offenses defined under SORNA. But doesn't the statute say and and not or? No, it said comparable. It said comparable to. I'm talking about the statute that authorizes the Secretary of Defense to designate. Doesn't it say that it's comparable? And he can go beyond that. In the Wetterling Act, it just said comparable. And then when they came in in 2006 with SORNA, the Sex Offender Registration and Notification Act, they amended it to say it's not comparable. It has as defined by SORNA. And then they delegated authority to him to say as defined or whatever is appropriate. And then a subparagraph underneath that said it has to be to the maximum. His designations have to be to the maximum extent practical, practicable. And the government, the DOJ's position, and the state of Texas' position is they could turn any military offense into an offense that requires somebody to register because that would better enforce military discipline. So you could have somebody accused of conduct unbecoming an officer with no sexual elements. And because telling that person you're going to have to register for 15 years as a sex, or going to be declaring you a sex offender if you engage in some non-sexual conduct, that would enforce military discipline. So you think it's non-sexual for somebody to show up unseen in a lady's restroom and take videos of them in the bathroom naked? That is not sexual? No, that's not what I'm saying. OK. I'm saying as in 2000. I was a little struggling to follow that one. OK. And the regulations published by the United States Attorney General in 2008 that are cited in the district court's opinion, the attorney general said not all offenses of a sexual nature require registration under SORNA. And that's a different point. But that's different from it not being sexual. I mean, if you stole some things at a grocery store, that's not sexual. But if you go in the bathroom and start filming all the naked people, that is. OK, I'm not denying it's sexual. What I'm saying is that SORNA was adopted, and the Attorney General of the United States published a guideline saying not all offenses of a sexual nature, which is what you're talking about, not all offenses of a sexual nature require registration under SORNA. Only those defined by SORNA require registration. That's why the statute itself does not require registration for this very offense when a minor is not the victim. Nobody on the other side disputes that, that under SORNA. But then they gave the Secretary of Defense some extra authority in this context. Not in this context. In the context of military. That is this context. Your client was in the military when this occurred. So that is the context. OK, yeah, it's a different context than civilians. But the question is, what did Congress mean when they said any designations by the Secretary have to be to the maximum extent possible, or practical, I'm sorry, to offenses that would require registration for civilians under SORNA? They consciously changed the law in 2006 when they did that. And they changed it from a looser standard of any offense that's comparable to offenses under SORNA. They said to the maximum extent practicable. The DOJ's argument in this case is, that only applies to procedures, not determinations of whether somebody is required to register. And that's false, because they use the word procedures and requirements in this note under section 951. Secondly, they argue that because the final subparagraph four, small realm renewal four, under note 951, refers to if this is somebody who's under jurisdiction of the Board of Prisons, blah, blah, blah, and you've got to follow these procedures that the prison people have to follow. That indicates to me that that whole 951 applies to this situation, the maximum extent practical. If you don't stick with that, if in this case the authority was to be recognized for the Secretary of Defense to pick something, what does the phrase mean to the maximum extent practical? It would open the door, and quite frankly, I think it could have a serious adverse effect on recruitment. If I was a young man thinking . . . What you're saying is that if it's not to the practical extent and it's interpreted like the defendant wants to interpret it, then a non-sexual offense could be classified by Texas authorities as something that a sex offender has to register or an offender has to register. If only to make your bed up on time. And that would deter and reinforce discipline for not obeying an order because they would be threatened with having to register as sex offenders. Something like disorderly conduct could become . . . Disorderly conduct and public intoxication. And it wouldn't be limited to the SORNA definitions, which is what Congress said, to the maximum extent practical. Now, the other thing that's kind of confusing here is that my opposing counsel don't seem to distinguish between . . . There's obviously broad authority of the Secretary of Defense to codify or formulate rules that military people have to follow. That's not the same thing as formulating or designating which among those would require registration under SORNA. Such other conduct language is, as the Secretary deems, appropriate for inclusion as a sex offense. So it's not, you know, stealing stuff at the mall that would be a sex offense. Yeah, but what's appropriate mean, if it's not limited . . . Appropriate for inclusion as a sex offense. Okay, that's fine. And so the issue . . . I don't think there's any doubt, as I thought already established, that this was sexually based and not some other thing, not something completely unrelated to sex. I'm not disputing that. And I think a kiss on the cheek would be sex, too. But I don't know that you can make somebody register to lie for kissing somebody on the cheek. Well, whether there could be something like that that comes up, why would you not do an as-applied against . . . and file that against the Secretary of Defense? Why is these people from Texas able to tell the Secretary of Defense what to do? Okay, it's the state defendants that are enforcing state law that's governed by their own choice, by the federal standard, under SORNA. Okay? And I'm not disputing that this is a sexual offense. But if you're going to take the U.S. Attorney General, who was delegated authority to define and interpret these rules in his guidelines, which he did in 2008, not all offenses of a sexual nature require registration under SORNA, only those offenses defined by SORNA. That's almost a verbatim quote in the guidelines and the citations in the district court's order referring to those guidelines in 2008. And it seems to me, respectfully, Judge Haynes, that you seem to be of the impression that anything sexual can be designated as a sex offense in the military. The Secretary of Defense has the power to do such other conduct as the Secretary deems appropriate for inclusion. Now, the amicus lawyer did not dispute that you could bring a case against the Secretary of Defense, whether it's an APA or something else, to say this was an inappropriate . . . not an appropriate inclusion, but an inappropriate inclusion, and we would be in a different world than analyzing all of this. But that's not the world we're in right now, right? I would disagree with that. Okay. Tell me why. The authority the state defendants have, only after providing procedural due process to require my client to register, depends on whether there is a valid designation of the military offense. The fact that we've gotten an injunction in the lower court, and that's the end of this case because it doesn't make any difference going forward. My client will not be required to register unless they provide procedural due process. And even then they couldn't do that because the judge never got to the procedural due process. He just flat . . . he approached this as wrong result as opposed to wrong procedure. Our claims were wrong procedure that resulted in this debate about wrong result, okay? Counsel, when you talk about procedural due process, wasn't due process afforded your client when he decided to plead guilty with knowledge, with instruction that he may be required to register? I don't . . . That's not due process. I realize it happened before a military tribunal, but the process is nonetheless there. Okay. All right. The reason why we say that's not procedural due process is it doesn't say you may be required to do this or you may be required to do that, okay? Under federal law, U.S. district judges are very clearly error if they do not make the determination at the time of the plea and even before the plea to notify the person. Under military law, under the Riley decision that I cite, the military, the highest military court in the country has said a plea requires the military judge to not say maybe, but you shall, you will be required to register, okay? And in circumstances like this where no finding is made, the parties don't consider the finding to be necessary, the issue is not, doesn't place a person like my client on notice or his counsel that they need to focus in on that question. What's your best case for the proposition that what was said here wasn't enough, that you may be required to register in states because the states are all different on this subject? Okay. We're just talking about federal registration duties, all right, that are guided by in Texas, that federal . . . Okay. So how on earth is the military supposed to necessarily know? I mean, even not just the U.S., you might go move to Iceland and you don't know what the rules are there, but the fact is you may be required to register and your client was told that. What is your best case to cite to us for the proposition that that's not enough in this context? I would say the Riley decision, the military justice court, that I believe is a 2013 case, is ultimately the military judge's obligation to make the federal finding, okay? And what we're talking about, whether it's state law, Texas state law, or the federal proceeding, is was there a finding that the victim was under 18 or over 18 in a way that would require registration under federal law? Because state law is in lockstep with federal law. The key issue is a federal one, and that key issue is was that something my client was on notice that needed to be litigated before the federal court or before the military court? And as Judge Yackel pointed out, the military court did not make a finding, did not think he was required on the federal question. With regard to the state question, he just said, no, somebody will decide after. If somebody decides later, you know, we don't know whether that's a parole officer, a probation officer, Department of Public Safety ex parte without notice and opportunity to be heard to raise the issue and present factual evidence on the material question of what was the age of the victim. And we're saying that under the 14th Amendment due process, we were required. Now, on the question about remand or not remand, Judge Yackel, although he's retired, spent almost three years getting there. There was a COVID break in there, but I don't think it was just laying dormant the whole time because there was motions practice. The factual question, the question of whether there's a material fact or not, I think it would be appropriate to remand the procedural due process that was not reached by Judge Yackel, the district court, rather than this court for the first time resolving a factual dispute. And the record is undisputed. My client, the victims were all adults, and that's not disputed. But it was at the time that the determination was made by the state defendants. It didn't make any difference to them whether my client got notice or not. It didn't make any difference to them whether my client would be required to register under SORNA or not because they were relying on a determination made by the Secretary of Defense, not the military judge, who didn't make it. So for all these reasons, we request that you— And there's one other thing, and I think it gets back to Judge Englehart's statement, is the remedy in this case is pretty obvious by the district court's judgment. The state defendants were ordered to—they were prohibited from placing my client's name, identifying information for the next 15 years as a registered sex offender on the World Wide Web and the database maintained by the state of Texas. That is a remedy, and I think that's pretty much the only remedy we're entitled to. As applied thing, if we wanted to bring the Secretary of Defense in, I suppose we could have, but it just was not necessary, and it certainly wasn't jurisdictional that we not do so based upon our procedural due process claim under the 14th Amendment because it wouldn't add anything to the relief we got. We'd get the same relief, and I think you just heard the state counsel or counsel for state defendants say that. It would be the same relief regardless of whether we brought the Secretary of Defense in or not, and it's adequate. So we'd ask that you affirm the district court's judgment. In the event that you get to the procedural due process issue that we raised on cross-appeal, I'd ask that you remand this case, directing the district court to consider that due process. It won't be Yackel. Well, it won't be Judge Yackel, and he hasn't been gone long. I already miss him, but— Well, thank you. Thank you so much. Thank you for your time. We now have some time for rebuttal from Katherine Cherry. Your Honors, I'm going to start by picking up on some of the questions that you had for my companion. The first is the question of how to translate the authority given to the Secretary of Defense in the 951 note. Other such conduct is in addition to the SORNA offenses that are allowed in the note, and also SORNA offenses include federal offenses as well as offenses under state law, tribal law, and foreign law. So Congress knew when it was telling the Secretary that they should designate UCMJ offenses under SORNA, that they were designating federal offenses as well as a whole bunch of others. And then in addition, the other such conduct allows the Secretary to do it even more. And as the United States clarified, this is necessary in the military context. And there's always been a separate set of laws in the military context, and Congress has always been the one who's creating those laws in the military context. But that doesn't mean that other such conduct is a blank check. It's within a statute that's SORNA. There's a statement of purpose in SORNA. It's also within other definitions of sex offense. So if the Secretary of Defense said stealing food from a mall is a sex offense, that's something that could be challenged and would likely win. Right. I mean, we don't want to take a position on it, especially with the U.S. at the table, but we think that that would be the argument, is that there's sufficient context to rein in the Secretary's designation of particular sex offenses. Topical sex offense is within the heartland of the sex offenses that the Secretary can designate, because Congress put his offense in Article 120C, and those offenses from Article 120 to 120C are the ones that Congress explicitly designated as sex offenses. And so to the extent that there's a question of whether or not the Secretary exceeded his authority in identifying certain sex offenses, topical is certainly not one of them. Another issue I think that we're addressing is that topical argues that there were certain issues that needed to be decided, such as whether or not his victim was a minor. That didn't need to be decided. He wasn't charged for conduct against a minor. And the way that the UCMJ works, conduct against a minor is like a 120 or 120A offense. Violent aggressive sex offenses, I think, are 120B. And then other sex offenses are 120C. So it was understood that this was not a crime against a minor and he wasn't charged that way. And Texas DBS didn't assume that, and it wasn't necessary for us to assume that in order to require him to be on the sex offender registry. Okay. You've used your time. Thank you. Appreciate everybody's arguments. The case is now closed.